IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES A. BONNER,

    Plaintiff,

  v.

REDWOOD MORTGAGE CORPORATION,
TED J. FISHER, MICHAEL BURWELL,
and DOES 1- 100,

    Defendants.
                                       /

No. C 10-00479 WHA

**ORDER ON MOTION TO DISMISS, FOR A MORE DEFINITE STATEMENT, AND TO STRIKE, AND VACATING HEARING**

## INTRODUCTION

In this predatory lending action alleging *sixteen* claims under federal and state law, defendants Redwood Mortgage Corporation, Ted J. Fischer (sued herein as "Fisher"), and Michael Burwell move to dismiss all claims asserted against them in the complaint. Defendants alternatively move for a more definite statement, and move to strike various portions of the complaint. For the reasons set forth below, defendants' motion to dismiss is **GRANTED**.

## STATEMENT

This dispute involves a mortgage loan secured by California real property in Sausalito (Compl. ¶ 3). The property is alleged to be "residential real estate" (*ibid.*). Nowhere in the complaint, however, is the property alleged to be plaintiff's primary residence. Indeed, the real property at issue is also the business address for plaintiff's counsel (*see* Compl. at 1).

The loan in question, as alleged in plaintiff's verified complaint, is loan number RMC05081366 (*ibid.*). The loan documents were purportedly signed by plaintiff Charles A. Bonner on or about May 20, 2008, at California Land Title of Marin before a notary public (*id.* at ¶ 19). Plaintiff Bonner, who is a licensed California attorney, signed the verified complaint and is one of two attorneys of record in this matter.

On March 12, 2010, while this motion was pending, defendants filed a request for judicial notice of several documents that are matters of public record, including real estate broker licenses for each defendant, and the deed of trust, notice of default, notice of trustee's sale, and trustee's deed upon sale pertaining to the property and loan at issue (Dkt. No. 20). Defendants also requested that judicial notice be taken of the promissory note, whose contents are alleged in the complaint (Compl. ¶ 24). Plaintiff filed no objection to the judicial notice request, nor voiced any objection to the request in his brief. When ruling on a motion to dismiss, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, *and matters properly subject to judicial notice*." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (emphasis added). This order finds that the promissory note and certified documents filed by defendants are properly subject to judicial notice under Rule 201(b)(2) of the Federal Rules of Evidence. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment") (citation omitted); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."). Defendants' request for judicial notice is therefore **GRANTED**.

The loan number for the particular mortgage alleged in the complaint — RMC05081366 — appears on the promissory note, deed of trust, notice of default, notice of trustee's sale, and trustee's deed upon sale submitted by defendants (Dkt. No. 20; Compl. ¶ 3). The deed of trust indicates a recording date of May 22, 2008 (Dkt. No. 20 at Exhs. A, K). Additionally, both the promissory note and the deed of trust indicate that a non-party to this action, Redwood Mortgage Investors VIII (hereinafter "RMI"), was the original lender (*id.* at Exhs. A, B). Defendants to this

action are licensed real estate brokers, evidenced by certified copies of their state licenses filed with their judicial notice request (*id.* at Exhs. F, G, H).

Plaintiff defaulted on his loan on July 1, 2009 (*id.* at Exh. C). On August 24, 2009, a notice of default was recorded in Marin County (*ibid.*). Three months later, a notice of trustee's sale was recorded on December 1, 2009 (*id.* at Exh. D). The trustee's sale was scheduled for January 5, 2010 (*ibid.*). While plaintiff initiated this action in state court on December 30, 2009, the trustee's sale went forward, and the property was sold to RMI (the original creditor) on January 5, 2010 (*id.* at Exhs. D, E). Defendants' timely removed this action on February 2, 2010, after receiving service of the summons and complaint on January 4, 2010 (Dkt. No. 1).

**ANALYSIS**

The complaint — which bears obvious indicia of being derived from generic foreclosure pleadings filed throughout the country — sets forth sixteen federal and state law claims: (1) violations of the federal Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. 1639 *et seq.*; (2) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2601 *et seq.*; (3) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.* and Regulation Z, 12 C.F.R. 226.1 *et seq.*; (4) violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*; (5) fraudulent misrepresentation; (6) breach of fiduciary duty; (7) unjust enrichment; (8) civil conspiracy; (9) civil RICO; (10) quiet title; (11) violations of California Business & Professions Code § 17200; (12) usury; (13) predatory lending; (14) unfair debt collection under California Civil Code § 1788 and the Fair Debt Collections Act, 15 U.S.C. 1692 *et seq.*; (15) invasion of privacy; and (16) intentional infliction of emotional distress.

As explained below, all of these claims must be dismissed.

**1.     STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual

3

allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Allegations sounding in fraud are subject to higher pleading standards. Under FRCP 9(b), such allegations must be pled with particularity, such that specific facts including "the time, place and specific content of the false representations as well as the parties to the misrepresentations" are alleged in the complaint. *Alan Neuman Prod., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citation omitted). Where multiple defendants are involved, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 765–66.

Finally, dismissal without leave to amend is only appropriate when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citation omitted). With these legal standards set forth, this order turns to the sixteen claims in the complaint.

**2.  VIOLATIONS OF HOEPA AND TILA**

Defendants are accused of violating HOEPA and TILA, including TILA's implementing Regulation Z (Compl.¶¶ 47-56, 61–64). TILA was enacted to protect credit consumers by mandating "meaningful disclosure of credit terms." 15 U.S.C. 1601(a). HOEPA amended TILA to provide specific protections for high rate mortgages. HOEPA provides that "[a] creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C. 1639(h). The provisions of HOEPA only apply to a mortgage secured by the consumer's principal dwelling if "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities . . . or the total points and fees payable by the consumer at or before closing

4

will exceed the greater of (i) 8 percent of the total loan amount; or (ii) $400." 15 U.S.C. 1602(aa).

The complaint alleged, without explanation, that plaintiff was a "consumer" and that "each defendant [wa]s a 'creditor' as defined by HOEPA" (*id.*¶ 49). How each named defendant met the statutory definition of a "creditor" under TILA and HOEPA was left purely to the imagination of the reader. Also absent from the complaint were any factual allegations describing whether and how the particular terms of mortgage loan number RMC05081366 fell within the scope of HOEPA. Finally, not one of the myriad of alleged HOEPA violations — which merely recited the statutory rules and requirements for HOEPA loans before claiming they were violated — was supported by *any* facts specific to the real property or mortgage loan in this litigation.

TILA, as amended by HOEPA, defined a "creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) *is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.*

15 U.S.C. 1602(f) (emphasis added). Regulation Z, promulgated by the Federal Reserve Board to assist in applying Section 1602(f), set forth an analogous definition for "creditor":

> (i) A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), *and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract*.

12 C.F.R. 226.2(a)(17)(i) (emphasis added). In certain situations, liability under TILA can also extend to assignees of the original creditor. *See* 15 U.S.C. 1641(a). This extension to liability, however, applies "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." *Id.*

Here, the promissory note and deed of trust for the mortgage transaction in question both indicated that RMI — a non-party — was the entity to whom the loan obligation was initially payable (Dkt. No. 20, Exhs. A, B). Moreover, at the time the notice of default and notice of

5

trustee's sale were recorded, RMI was *still* the beneficiary under the deed of trust (*id.* at Exhs. C, D). Indeed, it was RMI — not defendants — who purchased the Sausalito property at the foreclosure sale (*id.* at Exh. E).

Since the HOEPA and TILA provisions at issue only impose duties on "creditors" as defined above, and none of the named defendants in this action is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness" or "on the face of the note or contract," these claims cannot proceed against defendants. *See* 15 U.S.C. 1602(f); 12 C.F.R. 226.2(a)(17)(i). Moreover, the complaint failed to allege that any of the defendants were assignees to the original creditor, or that the violations asserted were apparent on the fact of the disclosure statement. *See* 15 U.S.C. 1641(a). Given that RMI appears to have been the beneficiary of the loan from its inception through foreclosure, it is difficult to see how plaintiff — if given leave to amend — could reasonably allege this exception in good faith.

Even more deficiencies plague these claims. *First*, a request for any damages under TILA or HOEPA is subject to a one-year statute of limitations, typically running from the date of the loan execution. 15 U.S.C. 1640(e). The loan in question was executed on May 22, 2008 (Dkt. No. 20, Exhs. A, K). Plaintiff filed this complaint on December 30, 2009 (Dkt. No. 1). While equitable tolling may be appropriate "in certain circumstances," such as when a borrower might not have had a reasonable opportunity to discover the non-disclosures at the time of loan consummation, the complaint failed to allege *any* facts to support the application of equitable tolling. *See King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986). Absent such facts, plaintiff's TILA claim is time-barred. *Second*, plaintiffs also do not sufficiently allege under *Iqbal* and FRCP 8 that the loan in question is a HOEPA qualifying loan; indeed, the complaint is devoid of *any* details pertaining to the particular mortgage loan in this litigation. *See* 15 U.S.C. 1602(aa)(1)(A), (B) (listing the types of mortgage transactions to which HOEPA applies). *Third*, the law is clear that plaintiff cannot seek rescission under these claims due to the fact that the property has already been sold! *See* 15 U.S.C. 1635(f) (the right to rescission under these claims ends when the property is sold).

6

For these reasons, plaintiff's TILA and HOEPA claims against all defendants must be **DISMISSED**. Additionally, plaintiff's claim for rescission against all defendants must be **DISMISSED WITH PREJUDICE**.

### 3. RESPA

Plaintiff alleges that, "[i]n violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed" (*id.* ¶ 59). Section 8(a) of RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. 2607(a). Section 8(b) similarly provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. 2607(b). A one-year statute of limitations applies to any action brought pursuant to these sections. 12 U.S.C. 2614.

As noted above, plaintiff's loan was executed on May 22, 2008, and this action was filed on December 30, 2009. No facts were pled to support the application of equitable tolling. As such, this claim is time-barred on its face. Moreover, plaintiff's allegations are *again* devoid of any factual allegations specific to the loan, real estate, or transaction in question. The "real estate services" that were performed, the "charges" that were accepted, and the services that were "actually performed" are a mystery to all involved, including the Court. These allegations are especially deficient given that this claim (and, in fact, every claim asserted in the complaint) is directed at all three defendants *as a group*. As with the TILA and HOEPA claims, plaintiff has only presented a myriad of legal conclusions couched as factual allegations. This is insufficient to survive a motion to dismiss. *See Iqbal*, 129 S.Ct. 1949-50.

Plaintiff's RESPA claim against all defendants is **DISMISSED**.

7

### 4. FAIR CREDIT REPORTING ACT

The complaint alleged that "defendants qualified as a provider of information to the Credit Reporting Agencies, including, but not limited to, Experian, Equifax, and TransUnion" and "wrongfully, improperly, and illegally reported negative information . . . resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO scores" (Compl. ¶ 66). Unsurprisingly, no factual allegations about when the alleged reporting of "negative information" occurred were set forth in the complaint. Moreover, the complaint failed to explain how defendants — who, as discussed above, were not lenders on the deed of trust and did not instigate foreclosure proceedings against plaintiff — would be in any position (or would have any reason or authority) to report information regarding plaintiff to the above-mentioned credit reporting agencies. In sum, there are insufficient factual allegations to state a claim against defendants that is plausible on its face.

Plaintiff's Fair Credit Reporting Act claim is **DISMISSED**.

### 5. FRAUDULENT MISREPRESENTATION

The particularity requirements of FRCP 9(b) apply to claims sounding in fraud. This is such a claim, and it falls miles short of meeting federal pleading standards. For example, the complaint failed to allege "the time, place and specific content of the false representations as well as the [particular] parties to the misrepresentations" (Compl. ¶¶70–75). *See Albright*, 862 F.2d at 1392. Even more fatal, plaintiff's allegations of fraud were *not* directed at individual defendants, but rather at all three defendants as a group. This is insufficient to meet the heightened pleading threshold of Rule 9(b). *See Swartz*, 476 F.3d at 765–66; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).

As such, plaintiff's claim for fraudulent misrepresentation must be **DISMISSED**.

### 6. BREACH OF FIDUCIARY DUTY

This claim illustrates one of the many troubling aspects of complaints sloppily derived from a template. The complaint began by emphatically characterizing all defendants as "lenders" (Compl. ¶ 2). In California, barring an assumption of duty or a special relationship, "financial

8

institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991); *see also Downey v. Humphreys*, 102 Cal.App.2d 323, 332 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."). The complaint, therefore, convicts itself. Since no factual allegations were made that an assumption of duty occurred or a special relationship existed, defendants — as "lenders" — owed no fiduciary duty to plaintiff.

Plaintiff's claim for breach of fiduciary duty is **DISMISSED**.

### 7. UNJUST ENRICHMENT

A claim for unjust enrichment — which is more accurately framed as a claim under an implied-in-law contract — requires the "receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (2000); *see also McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004). Ordinarily, a plaintiff must show that the benefit was conferred on the defendant through mistake, fraud, or coercion. *Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal.App.3d 1415, 1422 (1988).

The grounds for plaintiff's claim of unjust enrichment — that defendants "retain[ed] the benefits of charging a higher interest rate, fees, rebates, kickbacks, profits, and gains . . . unrelated to the settlement[] services provided at closing" — appear to be based upon the same alleged wrongdoing associated with plaintiff's RESPA claim (Compl. ¶¶ 82–86). *See* 12 U.S.C. 2607(b). Of course, as discussed above, no facts whatsoever were alleged to state a plausible claim under RESPA. Plaintiff's unjust enrichment claim is no different. While the complaint alleged that "[d]efendants had full knowledge that a "bait and switch" adjustable rate predatory mortgage . . . was not in the plaintiff's best interest[,]" and that defendants cannot retain benefits from payments "unrelated to the settlements of services provided at closing," there are *zero* factual allegations regarding the payments individual defendants received, and what services they supposedly "provided at closing" (*id.* ¶ 84). This is insufficient to state a claim under *Iqbal*, and to the extent that plaintiff's claim is grounded in allegations of fraud or mistake, this is grossly

9

insufficient under FRCP 9(b). Under either standard, the complaint failed to put *individual* defendants on notice of the nature of the claim and the grounds upon which it rested.

Separately, the promissory note and other documents of which this order has taken judicial notice indicate that plaintiff received a *fixed* rate note, not an "adjustable rate" mortgage as alleged for this claim (Dkt. No. 20, Exh. B). These documents also indicate that the loan was never sold (or, if it was, it was sold right back to RMI) (Dkt. No. 20, Exhs. B–E). Given this information (which plaintiff could have learned through reasonable diligence and investigation), the factual allegations in the complaint make absolutely no sense.

As such, plaintiff's unjust enrichment claim is **DISMISSED.**

### 8. CIVIL CONSPIRACY

There is no independent tort in California for civil conspiracy. *See Richard B. LeVine, Inc. v. Higashi*, 131 Cal.App.4th 566, 574 (2005); *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997). Since plaintiff has not stated a claim under any independent tort, this claim fails. Moreover, the complaint merely alleged that defendants performed the various elements of a civil conspiracy claim (*see* Compl. ¶¶ 87–91). *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994) (explaining that civil conspiracy generally requires: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy). Simply reciting claim elements is insufficient to state a claim under Rule 8. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Accordingly, plaintiff's claim for civil conspiracy must be **DISMISSED**.

### 9. CIVIL RICO

Providing the clearest indicator that plaintiff's complaint was derived from a generic mortgage pleading, plaintiff's civil RICO claim alleged that "[d]efendants are 'persons' as defined by ORC Sec. 2923.31(G)" (Compl. ¶ 93). It is true that ORC Sec. 2923.31(G) provides a

definition of the term "persons." The problem, however, is that this is Ohio law, not California law. The real property, parties, and loan documents in this dispute have — as far as the complaint has alleged — no connection whatsoever with Ohio.

The remaining civil RICO allegations are equally unintelligible (*see* Compl. ¶¶ 94–97). Assuming plaintiff's claim was based upon violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1962 *et seq.*, the complaint failed to specify which of the four subsections of Section 1962 defendants allegedly violated. Additionally, the complaint failed to allege the two predicate acts necessary to maintain a RICO action. *See* 18 U.S.C. 1961(5) (stating that to maintain a claim under the RICO statute, a plaintiff must allege that participants in the enterprise committed at least two of the predicate acts of racketeering enumerated in 18 U.S.C. 1961(1)). This is plainly insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

As such, plaintiff's civil RICO claim is **DISMISSED**.

**10. QUIET TITLE**

To state a claim to quiet title, a complaint must be verified and include (1) a legal description of the property and its street address or common designation, (2) the title of the plaintiff and the basis of the title, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Code Civ. Proc. § 761.020.

While the complaint was verified, it never set forth the date as of which the determination of ownership was sought. The complaint also never alleged how defendants claimed an interest in the real property at issue (*see* Compl. ¶¶ 98–102). Indeed, none of the defendants owns title to the Sausalito property. Rather, it is a non-party to this action — RMI — who received title to the property at the foreclosure sale (Dkt. No. 20, Exh. E). Additionally, plaintiff failed to allege unconditional tender, which is required to maintain an action to quiet title in California. *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (1984).

Given these deficiencies, plaintiff's claim to quiet title must be **DISMISSED**.

### 11. CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

California unfair competition law is quite broad, covering "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 *et seq.* Persons authorized to bring claims under this code section are "those who have suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. For this claim, the complaint alleged that "[b]y committing the acts described herein, defendants, and each of them, have engaged in unfair business practice, causing injury and damages to Plaintiff and therefore violated [Section 17200]" (Compl. ¶ 104). No additional allegations were set forth.

This is plainly insufficient under *Iqbal* and *Twombly*. *First*, the complaint failed to state a claim for *any* "unlawful" business act or practice. *Second*, no factual allegations were pled to put defendants on notice as to what "unfair" practices formed the basis for this claim. *Third*, assuming that a fraudulent activity formed the basis for this claim, the complaint set forth no factual allegations whatsoever to meet the particularity requirements of FRCP 9(b). *Fourth*, "damages" are *not* an available remedy under Section 17200. "A UCL [Section 17200] action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003). A prevailing plaintiff is generally limited to injunctive relief and restitution, meaning monies or property unfairly obtained by defendants in which plaintiff has an ownership interest. *Id.* at 1144, 1148. Unsurprisingly, no allegations were made to support a claim for restitution.

Plaintiff's claim under California unfair competition law is **DISMISSED**.

### 12. USURY

The prohibition on usury found in California's Constitution provides that "[n]o person, association, copartnership or corporation shall be charging any fee, bonus, commission, discount, or other compensation receive from a borrower more than the interest authorized under this section upon any loan or forbearance of any money, goods or things in action." Cal. Const., art. XV, § 1. "Under current California law, a loan that charges an interest rate greater than 10 percent per annum is usurious." *321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal.App.4th 1059, 1076 (2009) (citation omitted). There are, however, many exemptions to these

rules, including "any other class of persons authorized by statute." Cal. Const., art. XV, § 1. Of particular relevance to this litigation, loans made or arranged by licensed real estate brokers and numerous other lenders are exempt. *See id.*; *see also* Cal. Civ. Code § 1916.1.

There are four essential elements of usury: "(1) the transaction must be a loan or forbearance of the use of money; (2) the loan or forbearance must be made by a non-exempt lender and in a nonexempt transaction; (3) the interest received by the lender must be in excess of the statutory maximum rate that is applicable to the transaction; and (4) the lender must have a willful intent to enter a usurious transaction." *Ghirardo v. Antonioli* 8 Cal.4th 791, 798 (1994).

As with all of the claims already dismissed, the complaint failed to provide the requisite specificity to put defendants on notice of the grounds for this claim. *First*, plaintiff failed to sufficiently allege that the loan's interest rate was in excess of the statutory maximum rate. No details whatsoever were provided about the specific loan in question, including the interest rate and the specific statutory maximum that applied to the loan. *Second*, the complaint failed to allege that defendants — who appear to be licensed real estate brokers — are non-exempt from the usury law, and *why* they are non-exempt. *Third,* plaintiff failed to allege any facts showing that the loan fell outside the statutory definition of a non-exempt transaction. *Fourth*, and perhaps most important, the complaint failed to allege whether *any* interest was paid to the lender (*see* Compl. ¶¶ 105–110).

For these reasons, plaintiff's usury claim must be **DISMISSED**.

### 13. PREDATORY LENDING

Plaintiff's thirteenth claim is for predatory lending in violation of California Financial Code §§ 4970, *et seq.* (Compl ¶¶ 111-113). While the complaint alleged that "[a]ll defendants and 'Lenders' have engaged in predatory lending practices . . . , the specifics of which are unknown, but which are subject to discovery," certain factual allegations that plaintiff *should have known* are conspicuously absent from the complaint.

For example, plaintiff failed to allege facts showing that the loan in question was a "covered loan." Cal. Fin. Code § 4970(b). Under this code section, a "covered loan" is a "consumer loan," which is a "consumer credit transaction" that is secured by real property in

California used, or intended to be used or occupied, as the principal dwelling of the consumer that is improved by a one-to-four residential unit. Cal. Fin. Code § 4970(b), (d). The complaint alleged no facts demonstrating that the property in question met any of these requirements.

Moreover, even if facts sufficient to demonstrate that the loan in question was a "covered loan" were alleged, plaintiff's naked and conclusory allegations failed to provide sufficient notice to any individual defendants of their alleged wrongdoing. Indeed, the complaint failed to even specify which provisions of California's predatory lending laws were allegedly violated.

As such, plaintiff's predatory lending claim is **DISMISSED**.

### 14. UNFAIR DEBT COLLECTION

Plaintiff's claim for unfair debt collection alleged that defendants "have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to, Civil Code Sec. 1788(e) and (f); the Federal Debt Collections Act, . . . and the RESPA" (Compl. ¶ 115). Again, no specific factual allegations were set forth in the complaint.

Under the above-mentioned laws, a "debt collector" is any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6); *see also* Cal. Civ. Code § 1788.2(c). A defendant must be a "debt collector" to be subject to these laws. Despite this prerequisite, the complaint failed to explain how any of the named defendants were "debt collectors" under the above definition. Indeed, in light of the fact that non-party RMI was the original creditor on the loan and was the entity that instituted foreclosure proceedings against plaintiff, it is unclear to all involved what "debts" defendants are accused of collecting.

Additionally, the complaint failed to allege how the "debt" at issue was an "obligation of . . . a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transactions are primarily for personal, family or household purposes" as required under these laws. 15 U.S.C. 1692a(5); *see also* Cal. Civ. Code § 1788.2(b), (e). As repeated numerous times in this order, the complaint is devoid of specific facts about the actual mortgage loan at issue to state a plausible claim under *Iqbal* and *Twombly*.

For these reasons, plaintiff's unfair debt collection claim must be **DISMISSED**.

14

**15.  INVASION OF PRIVACY**

As yet another clear example of a sloppy "cut-and-paste" job using a generic mortgage pleading, the complaint alleged that defendants engaged in a "pattern and practice of misrepresenting themselves as Plaintiff to First Party Lien Holders and making payments on said First Party Liens in Plaintiff's name, fraudulently representing that they were Plaintiff" (Compl. ¶ 118).  Nobody in this litigation understands what this means.

Indeed, despite filing a *verified* complaint, plaintiff now admits that "the facts alleged in the current complaint were mistakenly included from a different complaint" (Opp. 9).  The fact that plaintiff, who is a licensed attorney, could sign his name, "declar[ing] under penalty of perjury" that he "read the foregoing Complaint and kn[e]w the content thereof," yet include outrageous factual allegations from a completely different complaint raises serious questions as to plaintiff's fitness to practice the law.

Plaintiff's claim for invasion of privacy is **DISMISSED WITH PREJUDICE**.

**16.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

To state a claim for intentional infliction of emotional distress, a party must allege (1) outrageous conduct, "so extreme as to exceed all bounds of that usually tolerated in a civilized community," (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) that the outrageous conduct proximately caused the emotional distress.  *Symonds v. Mercury Savings & Loan Assn.*, 225 Cal.App.3d 1458, 1468 (1990); *see also Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982) (defining "outrageous conduct").

Since the complaint is devoid of any specific factual allegations directed at any of the named defendants (as opposed to rote recitals of claim elements and general allegations directed at nobody in particular), plaintiff has failed to allege outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson*, 32 Cal.3d at 209. Indeed, given plaintiff's admission that various allegations originated from an entirely different complaint, this order declines to find that any of plaintiff's allegations meet this requisite threshold under *Davidson*.

Plaintiff's claim for intentional infliction of emotional distress is **DISMISSED**.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss all claims asserted in the complaint is **GRANTED**. In light of this ruling, defendants' motion for a more definite statement and motion to strike are **DENIED AS MOOT**.

While plaintiff may seek leave to amend the complaint (except as to those claims dismissed with prejudice), plaintiff is on notice that Rule 11 sanctions and/or referral to the State Bar of California for (1) failing to conduct a reasonable pre-filing inquiry and (2) signing a verified complaint containing generic and admittedly unfounded factual and legal allegations may be warranted if he continues to prosecute this action. In other words, any motion for leave to amend the complaint must be made in good faith, and must *strictly* adhere to the requirements of Rule 11. Otherwise, the Court, on its own initiative, may take appropriate action under Rule 11(c)(3) against plaintiff and counsel.

If plaintiff elects to continue prosecuting this action, plaintiff will have until **NOON ON APRIL 8, 2010**, to file a motion, noticed on the normal 35-day calendar, for leave to amend the complaint (with the proposed amended complaint attached as an exhibit). If no motion is filed by this deadline, the file will be closed, and judgment will be entered accordingly.

The hearing on these motions is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: March 29, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE